344 P.2d 699

**Jeff HOOKER, Plaintiff-Appellant,**

v.

**VILLAGE OF HATCH, a Municipal Corporation, Defendant-Appellee.**

No. 6546.

Supreme Court of New Mexico.

Sept. 4, 1959.

Rehearing Denied Oct. 20, 1959.

thority of § 14–39–32, N.M.S.A. 1953, and in order to do so it will be necessary to lay a pipeline from a point near Las Cruces northerly to the village, and also to install a distribution system within its borders.

It would not be economically feasible to install the lines and operate a distribution system unless it can also deliver gas to the water users to power their irrigation pumps between a point five miles north of Las Cruces and Hatch, and also some ten to twenty miles north. The water users to be served are all members of the Elephant Butte Irrigation District and the gas would, under the terms of the declaratory judgment entered below, be billed to the irrigation district, or an improvement district to be organized by it.

The pipelines and distribution system would be financed from the sale of revenue bonds under the statute above cited which contains the following proviso:

" * * * provided, however, that no such electric generating plant shall be located and no distribution lines shall extend beyond a distance of five (5) miles from the limits of such municipality, excepting for the sale of electricity or natural gas to the United States Government, the State of New Mexico, or any department or agency of such government."

Darden, Caffey & Mechem, Mary Simpson Goggin, Las Cruces, for appellant.

Garland & Martin, Las Cruces, for appellee.

McGHEE, Justice.

The Village of Hatch desires to furnish natural gas to its citizens under the au-

The trial court in a declaratory judgment action brought to determine the legality of

the proposed undertaking held the Elephant Butte Irrigation District was an agency of the State of New Mexico, and that therefore it would be lawful for the village to sell gas to it or to an improvement district it might organize, and this appeal followed.

The first and crucial question in the case is whether the irrigation district is an agency of the State of New Mexico.

The district was organized and operates under § 75–23–1 to § 75–23–45 and §§ 75–24–1 to 75–24–54, N.M.S.A.1953, covering irrigation districts cooperating with the United States under reclamation laws, and the territory under its jurisdiction is that part of the Rio Grande Reclamation Project south of Elephant Butte Dam and north of the Texas-New Mexico boundary line.

The pertinent enabling provision of the statute is § 75–23–18, N.M.S.A.1953, which reads:

"The said board is hereby authorized and empowered to take conveyances or assurances for all property acquired by it under the provisions of this act in the name of such irrigation district to and for the purpose herein expressed, and to institute and maintain any and all actions and proceedings, suits at law or in equity, necessary or proper in order to fully carry out the provisions of this act, or to enforce, maintain, protect or preserve any of the rights, privileges and immunities created by this act or acquired in pursuance thereof.

And in all courts, actions, suits, or proceedings the said board may sue, appear and defend in person or by attorneys and in the name of such irrigation district. Judicial notice shall be taken in all actions, suits and judicial proceedings in any court of this state of the organization and existence of any irrigation district of this state now or hereafter organized, from and after the filing for record in the office of the county clerk of the certified copy of the order of county commissioners mentioned in section 7(75–23–7), and a certified copy of said order shall be prima facie evidence in all actions, suits and proceedings in any court of this state of the regularity and legal sufficiency of all acts, matters and proceedings therein recited and set forth; and any such irrigation district, in regard to which any such order has been heretofore or may hereafter be entered, and such certified copy thereof, so filed for record, and which has exercised or shall exercise rights and powers of such district, and shall have had or shall have in office a board of directors exercising the duties of their office and the legality or regularity of the formation or organization whereof shall not have been questioned by proceedings in quo warranto instituted in the district court of the county in which such district or the greater portion

thereof is situated within one (1) year from the date of such filing, shall be conclusively deemed to be a legally and regularly organized, established and existing irrigation district within the meaning of this act and its due and lawful formation and organization shall not thereafter be questioned in any action, suit or proceeding whether brought under the provisions of this act or otherwise."

Nowhere in the statute is there any provision that such an irrigation district is a state agency, and there is no contention that it is an agency of the United States, although it was organized to operate under and cooperate with the United States in one of its reclamation projects.

The Village places its principal reliance for an affirmance on the case of People ex rel. Rogers v. Letford, 1938, 102 Colo. 284, 79 P.2d 274, 281, wherein the constitutionality of the Water Conservancy Act of Colorado (Ch. 266, Colorado Laws of 1937) was determined and the court held an irrigation district organized thereunder was an agency of the State of Colorado.

Such legislation contemplated statewide development and use of the waters of Colorado before they flowed past its borders, and was not limited as was Colorado's previous act authorizing the formation and operation of irrigation or drainage districts. It was given the right to levy taxes, provide water supplies for municipalities and other functions. To indicate the wide scope of the district to be organized thereunder we quote from the opinion:

" * * * It is reasonably asserted by competent engineering authority that, by the construction of adequate water storage and diversion systems, water may be carried from regions within our state having a surplus to those suffering from the lack of a sufficient supply, and by this process our statewide water supply made to do full duty before flowing from our borders. Such a program of conservancy is eminently a matter of state-wide concern."

In section 7 of the Act it was provided that any district organized under the Act " * * * shall be a political subdivision of the State of Colorado and a body corporate with all of the powers of a public or municipal corporation."

So with an Act of such state-wide purposes and the language quoted from section 7 it is not surprising that the court stated:

"These circumstances demonstrate, and we conclude, as the language of the act states, that its objects are of sufficient public benefit and advantage to the people of Colorado as a whole to constitute a public purpose and that the water conservancy districts authorized thereby are state agencies and public corporations."

The court further stated:

"The express authorization for power to levy taxes conferred by the Legislature upon the district here involved is found in article 10, § 7, of the Colorado Constitution, which reads as follows: '*Municipal taxation.*—The general assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may by law, vest in the corporate authorities thereof respectively, the power to assess and collect taxes for all purposes of such corporation.'

"In this grant of power lies the distinction between a water conservancy district under this act and the irrigation districts authorized by the Colorado Irrigation District Act of 1905, as amended, supra, '35 C.S.A. c. 90, § 377 et seq. The public character of the water conservancy district is the occasion for this difference. This distinction was made clearly evident by the words of this court in the case of Interstate Trust Co. v. Montezuma Valley Irr. Dist., 66 Colo. 219, 181 P. 123, 124, where it is stated: 'Irrigation district assessments are distinguished from taxes levied by a municipality for water works, and taxes levied for maintenance of schools because of the public nature of the latter. In the latter cases there is a direct public benefit, general in character, for which the public at large, through general taxes levied for that purpose, must pay.' "

We do not have such a situation in regard to the Elephant Butte Irrigation District. The dam and irrigation works had been constructed by the United States acting through its Reclamation Service and the district was organized for the purpose of cooperating with it and attending to such matters as came within its jurisdiction but only within its territorial jurisdiction. The irrigated lands are in private ownership, and the district acts as the agent of the owners for their private benefit. It does not levy taxes for its funds but makes a pro rata assessment on an acreage basis.

In Logan Irrigation District v. Holt, 1943, 110 Colo. 253, 133 P.2d 530, it was held that an irrigation district organized under ch. 90, § 377 et seq., 1937 Colorado Statutes Annotated, was not a municipal corporation or state agency, following its previous holdings to that effect in Interstate Trust Co. v. Montezuma Valley Irrigation District, 1919, 66 Colo. 219, 181 P. 123; Holbrook Irrigation Dist. v. First State Bank of Cheraw, 1928, 84 Colo. 157, 268 P. 523, and Colorado Investment & Realty Co. v. Riverview Drainage District, 1928, 83 Colo. 468, 266 P. 501.

The Colorado Irrigation Act under which the cases in the preceding paragraph were organized is in all essential respects the same as the New Mexico act under which

the Elephant Butte Irrigation District was organized and operates.

The Logan Irrigation District case was handed down several years after the opinion in the Letford case, and we regard it as strong authority in support of the position of the appellant here.

It may well be doubted if the Elephant Butte District has previously considered itself a state agency or else it would have pleaded immunity from suit in the case of Stahmann v. Elephant Butte Irrigation District, 1956, 61 N.M. 68, 294 P.2d 636, which was filed after our opinion in Vigil v. Penitentiary of New Mexico, 1948, 52 N.M. 224, 195 P.2d 1014, overruling the holdings in Locke v. Trustees of New Mexico Reform School, 1917, 23 N.M. 487, 169 P. 304, and Dougherty v. Vidal, 1933, 37 N. M. 256, 21 P.2d 90, to the effect that the corporate status of a state agency, particularly the power to sue and be sued, is determinative of the question of whether a suit against such agency is a suit against the state.

In Davy v. McNeill, 1925, 31 N.M. 7, 22, 240 P. 482, 489, this Court cited with approval State v. Board of Trustees of Town of Las Vegas, 1922, 28 N.M. 237, 210 P. 101, wherein it had been stated:

"The phrase other 'municipal corporations' did not extend to organizations like the appellant (land grant), nor to corporations nor bodies, which by their nature were not bodies politic and corporate, nor instrumentalities, nor agencies of the state government."

The Court then stated:

"* * * We add thereto that it does not apply to such public corporations as irrigation districts, organized for municipal purposes."

We are of the opinion and hold the Elephant Butte Irrigation District is not an agency of the State of New Mexico, and that the Village of Hatch may not sell gas to it more than five miles from the village boundary, and it necessarily follows that it also could not sell gas to an improvement district organized under its authority.

What has been said makes it unnecessary to pass upon the other points raised by the appellant.

The judgment will be reversed and the cause remanded to the district court with instructions to enter another judgment in accordance with the views herein expressed.

It is so ordered.

LUJAN, C. J., and COMPTON, CARMODY and MOISE, JJ., concur.