541 P.2d 967 (1975)
88 N.M. 402
AMERICAN AUTOMOBILE ASSOCIATION, INC., Petitioner,
v.
BUREAU OF REVENUE of the State of New Mexico, Respondent.
No. 10528.
Supreme Court of New Mexico.
October 3, 1975.
Rehearing Denied November 3, 1975.
Robert L. Christensen, Albuquerque, Zinn & Donnell, Dean S. Zinn, Santa Fe, Chavez & McDonald, Tibo J. Chavez, Belen, for petitioner.
Toney Anaya, Atty. Gen., Vernon O. Henning, Joseph T. Sprague, Asst. Attys. Gen., Santa Fe, for respondent.

OPINION
McMANUS, Chief Justice.
This matter is before the court for the second time, this time being pursuant to a writ issued to the Court of Appeals of the State of New Mexico on July 2, 1975.
By majority of this court in the first cause we reversed the Court of Appeals on the basis that the American Automobile Association, Inc. (A.A.A.) was a non-profit organization, contrary to the opinion of the Court of Appeals. American Automobile Ass'n, Inc. v. Bureau of Revenue, 87 N.M. 330, 533 P.2d 103 (1975).
In that case, we concluded as follows:
"The decision of the Court of Appeals is reversed, insofar as it determines that American Automobile Association, Inc. is not a nonprofit organization, and the cause is otherwise remanded to the Court of Appeals for a determination of the other issues raised concerning whether or not American Automobile Association, Inc. is a `business organization,' and *968 whether or not the receipts involved are from `dues and registration fees.'"
Subsequently, on April 23, 1975, the Court of Appeals rendered its second opinion, American Automobile Ass'n, Inc. v. Bureau of Revenue, 88 N.M. 148, 538 P.2d 420 (Ct.App. 1975), stating:
"The `business organization' issue is dispositive. Taxpayer is not a business organization within the meaning of the statute. * * *"
The applicable statute is § 72-16A-12.27, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, 1973), which reads:
"Exempted from the gross receipts tax are the receipts from dues and registration fees of nonprofit social, fraternal, political, trade, business, labor or professional organizations."
In the cause before us now, A.A.A. presents the following questions for review:
(1) Did the Court of Appeals err in holding that petitioner is not a business organization within the meaning of § 72-16A-12.27, supra?
(2) Did the Court of Appeals err in failing to pass on the issue of whether the receipts involved in petitioner's activities are from dues and registration fees, on the ground that the "business organization" issue is dispositive, notwithstanding the mandate and order of this court in its former opinion, supra?
(3) Did the Court of Appeals err in failing to grant a motion for rehearing?
At a hearing before the Commissioner of Revenue, on July 16, 1973, Mr. Mallory, General Manager of the New Mexico Division of American Automobile Association, testified in part as follows:
"Q. Go ahead and tell the Commissioner just exactly as I said here, tell us about the location and principal nature of the business conducted by the American Automobile Association and you can refer to this, you can refer to any of these documents that we have down here and whatever you need to refer to, just go right ahead.
"A. The individual motor clubs, which includes the New Mexico Division, are semi-autonomous non-profit organizations. They have their own building, offices, Board of Directors and determine their own policies within their respective jurisdictions.
* * * * * *
"Q. Go ahead. Just go right ahead.
"A. However, in order to obtain their A.A.A. affiliation, clubs must meet certain requirements such as providing well defined privileges for members, having within their members a stated proportion registered within their territory. Each club provides services to its own members and by a simple arrangement, each services members of the other clubs visiting in their territory. A.A.A. clubs, including the Protestant, have a two-fold mission: First, to provide specialized services to the members, such as emergency road service, travel and train service and other direct benefits. Among the other direct benefits to members are bail bond protection, guaranteed arrest bonds, personal accident insurance, legal reimbursement, check cashing, license and title service, theft reward protection, and file publications.
"Second, to work for the improvement of motoring and travel conditions generally, particularly in the field of legislation, highway, taxation and street and highway safety at the national, state and local level.
"Q. While you are there, Mr. Mallory, would you give a current example of how you are helping the public with respect to motoring conditions, and I have reference to the gasoline shortage?
"A. At the moment in New Mexico, we solicit from 60 service stations information as to what his actual condition is at the gas pump each Thursday morning. Naturally, we solicit this information from gas stations nation-wide in all of *969 the states, I believe, except Alabama. We put out national news releases giving the actual conditions for the members' benefit. It so happens this information is beneficial to the State of New Mexico. We are showing a gradual improvement of 2 per cent of the stations staying open longer hours and a reduction in the areas where there is no 24-hour service and so forth. This is very beneficial to  particularly if you are going to Denver where the situation is very critical which is also making our local news media because of its close proximity. Available in our offices are national maps and, incidentally, we are passing these out to the public in general. Last week it contained in the news media  or statements to the fact that any motorist calling our office would be provided with information concerning the gas situation.
* * * * * *
"Q. Also, Mr. Mallory, you have a program in connection with the schools in New Mexico?
"A. Yes, we have two or three programs.
"Q. Would you tell the Commissioner about that?
"A. First of all, we have a film library where we lend to schools or any organization films pertaining to traffic and safety. Six out of seven years prior to around 1965, we won the Oscar for traffic safety film. When you are competing with Walt Disney, we were pretty proud of it.
"We also had a pedestrian safety poster contest. These were made by art students and all students who wished to participate. Thirteen posters were selected, reproduced and distributed to all the schools together. They are broken up in three-year segments starting with kindergarten through second grade and each three years thereafter for the schools. The Buster Brown program which we provide materials for almost all schools who participate  that is the Buster Brown belt, badge and merit system, lifeguard saving medals presented each year by the President. They don't want me to mention that, do they?
"This is on a voluntary basis that Triple A salesmen provide to schools at approximately one-half their cost."
In addition, Mr. Mallory testified that the A.A.A. is nonprofit with no direct benefits to any employee of monetary gains. Further in the hearing proceedings, Mallory testified:
"Q. With respect to your revenues  we will talk about New Mexico  what would you say about your revenues and their uses?
"A. Well, each membership has dues annually. A portion of that is returned to national headquarters to pay for national services, safety legislation and so forth. Immediately upon enrollment or renewal of members there is also a portion allowed to be paid for direct services. We have no control over how much this will be, but we have, on an actuary basis we are able to determine fairly accurately what the cost will be in road service, travel and so forth. We also have a local department. We call it Member Relations Department which takes care of our legislature, safety and ativities local.
"Q. Would you say that any of your funds are used  I am talking about your revenue  in the New Mexico Division are used for anything except improving motoring and traveling conditions and services of members, either directly or indirectly? Is the money used for any other purpose?
"A. No.
* * * * * *
"Q. Mr. Mallory, you stated that the members do not receive any remuneration. Are there any dividends paid to members?
"A. You are speaking of members of the Advisory Board?

*970 "Q. Well, the members that pay dues?
"A. No.
"Q. And the registration fees?
"A. They receive services, but no dividends.
"Q. Is anyone paid any dividends?
"A. No.
"Q. Are any shares issued to any of the members?
"A. No.
"Q. Are any of the directors, officers or members paid any amount of money or receive any profits?
"A. No.
"Q. What if you have a surplus for a year that you have already budgeted? What happens to the surplus?
"A. Well, we haven't been faced with that problem since the inflation began and that is since I have been in New Mexico. As a reality, we normally ask for a dues increase every four to five years. The first year after the dues increase we will realize a profit. The second year, we will realize a small profit and then we go in the hole for the next two or three years and we ask for another dues increase.
"Q. If you have a profit from one year, it is plowed back into the program? I mean, it is not distributed among members?
"A. No.
"Q. Actually, it is contrary to your rules and regulations and your policy and against your charter?
"A. It is forbidden by the minimum national standards for any individual to share monetarily other than through remuneration for salaries.
"Q. So no one derives any profit individually from the operation of Triple A?
"A. No."
Webster's Third New International Dictionary (1966) contains the following definitions:
BUSINESS: "* * * 1 b (1): a usu. commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision * * * (2) a commercial or industrial enterprise * * *."
ORGANIZATION: "* * * 2 b: a group of people that has a more or less constant membership, a body of officers, a purpose, and usu. a set of regulations * * * [one of the examples given is `tax exemption for religious and charitable (organizations).']"
In our opinion, A.A.A. is a "business organization" in the common understanding of that term. It is a group of people that has a more or less constant membership, a body of officers, a purpose, and a set of regulations. This group engages in a commercial activity, even though it is a nonprofit activity. It is not necessary for all of the members to engage in business in order for a group to constitute a business organization. We conclude from the testimony quoted and the definitions given that A.A.A. is a nonprofit business organization under § 72-16A-12.27, supra.
The second point raised by A.A.A. refers to the question of whether or not the receipts involved in petitioner's activities are from dues and registration fees. Even though the Court of Appeals failed to pass on this question, we will do so. We hold from the testimony quoted that the receipts involved are from dues and registration fees.
It is not necessary to discuss the third point of A.A.A. in view of our disposition of this matter.
The decision of the Court of Appeals is reversed.
It is so ordered.
STEPHENSON, MONTOYA and SOSA, JJ., concur.
OMAN, J., dissenting.
OMAN, Justice (dissenting).
*971 As observed in the majority opinion, this is the second time this cause has been before us upon a writ of certiorari directed to the New Mexico Court of Appeals. On the first occasion I disagreed with the majority, because I am of the opinion that the prior decision of the Court of Appeals was correct. American Automobile Ass'n, Inc. v. Bureau of Revenue, 87 N.M. 330, 533 P.2d 103 (1975). That court has now reached the same result it reached in its prior opinion, but for a different reason. American Automobile Ass'n, Inc. v. Bureau of Rev., 86 N.M. 569, 525 P.2d 929 (Ct.App. 1974); American Automobile Ass'n, Inc. v. Bureau of Revenue, 88 N.M. 148, 538 P.2d 420 (Ct.App. 1975). I again concur in that result and in the reasoning advanced by the Court of Appeals in its latest opinion in support of that result.
In addition to the reasoning of the Court of Appeals, with which I agree, I particularly point out, as did the Court of Appeals in its latest opinion [American Automobile Ass'n, Inc. v. Bureau of Revenue, 88 N.M. 148, 538 P.2d 420 (Ct.App. 1975)], that the term "business organization," as used in § 72-16A-12.27, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp. 1973), is not defined in the statute and is ambiguous.
Since this is a case involving an exemption from taxation we are bound by the following principles of construction:
(1) Taxation is the rule, and exemption therefrom is the exception. Flaska v. State, 51 N.M. 13, 177 P.2d 174 (1946).
(2) A statutory exemption from taxation must be strictly construed against the person claiming the exemption and in favor of the taxing authority. McKee v. Bureau of Revenue, 63 N.M. 185, 315 P.2d 832 (1957); Peisker v. Unemployment Compensation Commission, 45 N.M. 307, 115 P.2d 62 (1941); Samosa v. Lopez, 19 N.M. 312, 142 P. 927 (1914); Rock v. Commissioner of Revenue, 83 N.M. 478, 493 P.2d 963 (Ct.App. 1972).
(3) Exemptions from taxation are never presumed, and the burden is on one claiming an exemption to clearly establish a right to that exemption. Flaska v. State, supra; Iden v. Bureau of Revenue, 43 N.M. 205, 89 P.2d 519 (1939); Rock v. Commissioner of Revenue, supra; Reed v. Jones, 81 N.M. 481, 468 P.2d 882 (Ct.App. 1970).
(4) A legislative intention to create an exemption from taxation must be expressed in clear and unambiguous language. Flaska v. State, supra; Reed v. Jones, supra.
(5) A claim of exemption from taxation should be sustained only if it comes within the express letter or necessary scope of the exempting language. McKee v. Bureau of Revenue, supra; Samosa v. Lopez, supra.
Guided by these rules of construction, which have long been recognized by the courts of this state, I am unable to construe the language in question as embracing the petitioner.
For all the reasons stated by the Court of Appeals, and for the additional reasons herein stated, I respectfully dissent.