630 P.2d 767

Eddye TOMPKINS, Mother and Next Friend of Douglas B. Newby, Deceased, Plaintiff-Appellee,

v.

CARLSBAD IRRIGATION DISTRICT, James R. Craft, L. A. Johnson, L. N. Ferguson, Eugene C. Walterscheid and John Giovengo, Members of the C.I.D. Board of Directors, Defendants-Appellants.

No. 5068.

Court of Appeals of New Mexico.

June 16, 1981.

Carl J. Butkus, Civerolo, Hansen & Wolf, P. A., Albuquerque, Jay W. Forbes, McCormick & Forbes, Carlsbad, for defendants-appellants.

Tom Cherryhomes, Carlsbad, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Douglas, an infant approximately seventeen months old at the time, drowned in water standing in a culvert. The culvert carried irrigation ditch water underneath a highway. Plaintiff sought damages from CID (Carlsbad Irrigation District) and the directors of CID. Defendants moved to dismiss and converted that motion to one for summary judgment by the use of an exhibit showing the organization of CID and certain depositions. Rule of Civ. Proc. 12(b). The trial court denied the motion; we granted defendants' application for an interlocutory appeal. We discuss: (1) whether a governmental entity is involved; (2) § 41–4–6, N.M.S.A. 1978; (3) § 41–4–11, N.M.S.A. 1978; and (4) the legal sufficiency of the damage claim.

*Governmental Entity*

Governmental entities and public employees acting within the scope of duty are granted immunity from liability for tort except as provided in the Tort Claims Act, § 41–4–4(A), N.M.S.A. 1978 (1980 Cum. Supp.). Public employee is defined to include officers of a governmental entity, § 41–4–3(E), N.M.S.A. 1978. The status of the individual defendants as officers of CID is not challenged; the individual defendants are public employees for the purposes of this suit if CID is a governmental entity.

Section 41–4–3, supra,

1. in subsection B, defines governmental entity as the state or any local public body as defined in subsections C and G;

2. in subsection C, defines local public body as all political subdivisions of the state and their agencies, instrumentalities and institutions; and

3. in subsection G, defines state or state agency to mean the State of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions.

The organization of CID was completed upon entry of a court order approving organization in 1933. The organization was pursuant to Chapter 73 of the Compiled Laws, 1929, see Ch. 73, Articles 10 and 11, N.M.S.A. 1978. Irrigation districts so organized were validated by Laws 1934 (S.S.), Ch. 9, now appearing as §§ 73–13–43 to 73–13–46, N.M.S.A. 1978. There is no issue as to the valid organization of CID; our concern is with a provision in the 1934 validating law.

■ Section 73–13–44, supra, refers to irrigation districts organized under the irrigation law and states "the aforesaid irrigation districts are hereby created, established and organized and continued bodies corporate and politic . . . ." "[T]he legislature has power to create . . . political subdivisions for a public purpose." *Albuquerque Met. Arroyo Flood Con. A. v. Swinburne*, 74 N.M. 487, 394 P.2d 998 (1964).

The Legislature having established CID as a "body politic," the issue is whether a body politic is a political subdivision and, thus, a local public body under the Tort Claims Act. We do not consider whether CID is a state agency because of the decision in *Hooker v. Village of Hatch*, 66 N.M. 184, 344 P.2d 699 (1959), which held that the Elephant Butte Irrigation District was not an agency of the state.

*Davy v. McNeill*, 31 N.M. 7, 240 P. 482 (1925), states that irrigation districts are not municipal corporations, but public corporations for municipal purposes. See also *Daniels v. Watson*, 75 N.M. 661, 410 P.2d 193 (1966). We do not involve ourselves with the meaning of quasi-municipal because such is irrelevant in this case. See *Gallagher v. Albuquerque Metro., Etc.*, 90 N.M. 309, 563 P.2d 103 (Ct.App.1977). Whether CID is a quasi-municipal corporation is not an issue; the issue is whether CID is a local public body.

*In re Dexter-Greenfield Drainage District*, 21 N.M. 286, 154 P. 382 (1915), points out that irrigation districts are organized for the purpose of exercising a public function and not for private gain. *Gutierrez v. Middle Rio Grande Consv. District*, 34 N.M.

346, 282 P. 1, 70 A.L.R. 1261 (1929), states that irrigation is a public use. *Gibbany v. Ford*, 29 N.M. 621, 225 P. 577 (1924), defined a political subdivision as "formed or maintained for the more effectual or convenient exercise of political power within certain boundaries or localities, to whom the electors residing therein are, to some extent, granted power to locally self-govern themselves." The provisions of Ch. 73, Articles 10 and 11, N.M.S.A. 1978, meet this definition. *Donalson v. San Miguel County*, 1 N.M. (Gild.) 263 (1859), held that a county, authorized by the Legislature, was a body "politic and corporate."

■ The authority cited in the immediately preceding paragraph would sustain a holding that CID is a political subdivision. In addition, we have a legislative declaration that an irrigation district, such as CID, is a body corporate and politic. Such a body is a political subdivision. *Gallagher v. Albuquerque Metro., Etc.*, supra; see *In re Garrison Diversion Conservancy District*, 144 N.W.2d 82 (N.D.1966). CID is a local public body as defined in § 41–4–3, supra, and is a governmental entity. Accordingly, the Tort Claims Act applies to the claims against defendants.

*Section 41–4–6*

This section reads:

*41–4–6. Liability; buildings, public parks, machinery, equipment and furnishings.*

The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings. Nothing in this section shall be construed as granting waiver of immunity for any damages arising out of the operation or maintenance of works used for diversion or storage of water.

Defendants contend the last sentence of this section provides immunity from plaintiff's damage claim. According to the depositions, the ditch involved brought water from CID's canal; the culvert involved carried the ditch water underneath the highway; the water standing in the culvert resulted from the operation or maintenance of works used for the diversion of water.

Plaintiff does not contend that, factually, CID does not come within the last sentence of § 41–4–6, supra. Plaintiff's contention is: "Nowhere does the section use the term irrigation district and . . . if this were read into the bill, it would clearly be violative of Art. IV, § 16" of the Constitution of New Mexico.

■ Article IV, § 16 of our Constitution, states requirements concerning the title of legislative enactments. The titles to the New Mexico Tort Claims Act, as enacted by Laws 1976, Ch. 58, and to the amendatory act, Laws 1977, Ch. 386, are not involved. The title of both Acts refer to the liability of government in the State of New Mexico. Plaintiff's argument is not directed to the title of an act, but to a section heading.

■ Plaintiff's argument is directed to the legislatively-enacted section heading to § 41–4–6 which is quoted above. That section heading is of no assistance to plaintiff because there is no ambiguity in § 41–4–6. Immunity is waived for specified items in the first sentence of § 41–4–6; the second sentence limits that waiver of immunity when the claimed negligence is based on the operation or maintenance of works used for diversion or storage of water. The contents of § 41–4–6, being unambiguous, the use of a legislatively-enacted section heading to determine legislative intent is not involved. See *State v. Ellenberger,* 96 N.M. 287, 629 P.2d 1216 (1981); *American Automobile Ass'n, Inc. v. Bureau of Rev.,* 88 N.M. 148, 538 P.2d 420 (Ct.App.1975), rev'd on other grounds, 88 N.M. 462, 541 P.2d 967 (1975).

■ Under § 41–4–4(A), supra, a governmental entity is immune from liability except as provided in the Tort Claims Act.

Section 41–4–6, supra, is not a waiver of immunity for damages arising out of the operation or maintenance of works used for diversion or storage of water; § 41–4–6 does not provide a basis for holding defendants liable to plaintiff.

*Section 41–4–11*

This section reads:

41–4–11. *Liability; highways and streets.*

A. The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the maintenance of or for the existence of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

B. The liability for which immunity has been waived pursuant to Subsection A of this section shall not include liability for damages caused by:

(1) a defect in plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; or

(2) the failure to construct or reconstruct any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

Plaintiff contends that § 41–4–11 is a waiver of immunity for negligence in connection with the maintenance or existence of a culvert.

■ Defendants contend that the specific limitation of § 41–4–6 (the second sentence of § 41–4–6, discussed above), makes § 41–4–11 inapplicable. We disagree. The express language of the second sentence of § 41–4–6, supra, shows that the specific limitation applies to "this section"; thus, the specific limitation applies only to § 41–4–6. Compare § 41–4–13, N.M.S.A. 1978, which is a general provision excluding community ditches or acequias from all waivers of immunity.

Section 41–4–11, supra, literally read, states a waiver of immunity in connection

with "any culvert". In *O'Brien v. Middle Rio Grande, Etc.*, 94 N.M. 562, 613 P.2d 432 (Ct.App.1980), we pointed out that "any" means "one or more" or "all". The question is whether the waiver in § 41–4–11 literally applies to all culverts.

Webster's Third New International Dictionary (1966) defines "culvert" to mean "a transverse drain or waterway (as under a road, railroad, or canal)". See *Herrick v. Town of Holland*, 83 Vt. 502, 77 A. 6 (1910). A question arises as to whether "culvert" means "any" such transverse drain because cases have limited the meaning of culvert to drains running under a road, *Kowalka v. Village of St. Joseph*, 73 Mich. 322, 41 N.W. 416 (1889); *DiLorenzo v. Village of Endicott*, 70 Misc.2d 159, 333 N.Y.S.2d 456 (1972), and because of the context in which "culvert" is used in the statute.

■ The series of words used in § 41–4–11, supra, is "bridge, culvert, highway, roadway, street, alley, sidewalk or parking area." In this context, the Legislature used bridges and culverts as bridges and culverts used in connection with highways, roadways, streets, alleys, sidewalks and parking areas. See *American Automobile Ass'n, Inc. v. Bureau of Rev.*, supra. This resolution of the meaning of "any" culvert is supported by the legislatively-enacted section heading, "Liability; highways and streets." *State v. Ellenberger*, supra.

In this case, it is not disputed that the culvert is a transverse drain under a highway; the waiver of immunity in § 41–4–11, supra, is applicable in this case and provides a basis for liability against defendants.

■ The uncontradicted showing in the depositions is that the culvert was erected by either the State Highway Department, or its contractor, in expanding the highway from two lanes to four lanes. Thus, under the showing made, defendants are not to be held liable for the erection of this culvert. There is no showing as to whether defendants were responsible for the maintenance of the culvert. Defendants not having made a showing as to maintenance of the culvert, they were not entitled to sum-

mary judgment on the basis that they did not maintain the culvert. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

*Sufficiency of the Damage Claim*

The damage claim is ambiguously stated; it reads:

Plaintiff has suffered and will continue to suffer physical and mental pain and suffering, her loss of earning capacity by her minor decedent, DOUGLAS B, [sic] NEWBY, her loss of her decedent's society, and her own personal grief and sorrow, all to the sum of $100,000.00 actual damages.

The briefs argue the damage claim as one for wrongful death and for "bystander recovery". We are not concerned with whether plaintiff, suing as mother and next friend, is the proper party to seek recovery of damages for wrongful death; no issue is raised as to that. Nor are we concerned with bystander recovery in New Mexico. See *Curry v. Journal Pub. Co.*, 41 N.M. 318, 68 P.2d 168 (1937); *Aragon v. Speelman*, 83 N.M. 285, 491 P.2d 173 (Ct.App.1971).

The waiver of immunity in § 41–4–11 applies "to liability for damages resulting from bodily injury, wrongful death or property damage . . . ."

■ The complaint does not claim property damage. The deposition of plaintiff contains an uncontradicted showing of no bodily injury. Compare *Higgins v. Hermes*, 89 N.M. 379, 552 P.2d 1227 (Ct.App.1976). Accordingly, the damage claim is limited to damages recoverable for wrongful death.

The denial of summary judgment is affirmed on the basis that there is a claim for damages for wrongful death based on defendants' asserted negligent maintenance of the culvert.

IT IS SO ORDERED.

HERNANDEZ, C. J., and LOPEZ, J., concur.