The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **October 26, 2023**

**No. A-1-CA-39628**

**DENNIS P. MURPHY, Personal Representative of the ESTATE OF TIFFANY STONE, Deceased,**

Plaintiff-Appellant,

v.

**JAMES R. LASH, D.O.; SHAHRIAR ANOUSHFAR, D.O., F.A.C.S.; and JOHN DOES 1-5,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Eileen P. Riordan, District Court Judge**

Sandoval Firm
Richard A. Sandoval
Santa Fe, NM

Collins & Collins, P.C.
Parrish Collins
Albuquerque, NM

for Appellant

Miller Stratvert PA
Stephen M. Williams
Thomas R. Mack
Kendall M. Barnett
Albuquerque, NM

for Appellee James R. Lash, D.O.

Hinkle Shanor LLP
Kathleen Wilson
Hari-Amrit Khalsa
Albuquerque, NM

for Appellee Shahriar Anoushfar, D.O.

**OPINION**

**HENDERSON, Judge.**

{1}    Plaintiff Dennis Murphy appeals from two district court orders. First is an order granting summary judgment in favor of Defendant Shahriar Anoushfar, D.O., in which the district court concluded that Plaintiff's claims against him were time barred by the two-year statute of limitations in the New Mexico Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -27 (1976, as amended through 2020). Second is an order dismissing Defendant James Lash, D.O., for Plaintiff's failure to serve process with reasonable diligence under Rule 1-004(C)(2) NMRA. As to the motion for summary judgment, Plaintiff argues that the district court erred in concluding that the complaint was untimely because Dr. Anoushfar failed to present evidence that he was a public employee under the TCA. As to the motion to dismiss, Plaintiff argues that the district court erred because Dr. Lash failed to demonstrate prejudice caused by any delay in service. We reverse in part, concluding that Dr. Anoushfar did not present evidence sufficient to show that he was a public employee, and we therefore remand to the district court for further proceedings consistent with this opinion. We otherwise affirm the district court's dismissal of Dr. Lash due to Plaintiff's extreme and unjustified delay in serving process.

## BACKGROUND

{2}      In 1989, the Legislature created the Artesia Special Hospital District (ASHD), pursuant to the Special Hospital District Act, NMSA 1978, §§ 4-48A-1 to -30 (1978, as amended through 2019). Section 4-48A-3.1. The Special Hospital District Act gives ASHD the power to "lease a hospital to any person, corporation or association for the operation and maintenance of the hospital." Section 4-48A-9(M). ASHD did so, and agreed to let VHA Southwest Community Hospital Corporation (CHC), a nonprofit corporation, run a hospital in the district. The agreement provides that CHC is responsible for operating the hospital through another nonprofit corporation, the Artesia General Hospital (AGH), of which CHC is a member.

{3}      On September 1, 2016, Plaintiff filed a complaint in Eddy County alleging medical malpractice and other claims arising from treatment received by Decedent Tiffany Stone at AGH in September and October 2013. Plaintiff sued AGH, Dr. Anoushfar, who allegedly performed the surgery on Stone, and Dr. Lash, who allegedly interpreted Stone's CT scans. Plaintiff later voluntarily dismissed AGH from the suit. Because the two remaining defendants were dismissed at different times and for different reasons, we discuss the relevant background for each separately.

2

## I.    Dr. Anoushfar

{4}    Dr. Anoushfar moved for summary judgment on all claims based on his asserted status as a public employee. Dr. Anoushfar asserted it was undisputed that ASHD was a governmental entity under the TCA, and that ASHD retained powers to control aspects of AGH under the operating agreement, such as control over the physical assets of AGH, and provided 15 percent of AGH's operating budget. He also noted that AGH's board of directors is "comprised of at least six members who are residents of the ASHD," two from the hospital staff, and one from CHC. According to Dr. Anoushfar, the retained powers, funding, and composition of the board of directors were sufficient to make AGH a governmental entity under the TCA, despite AGH itself being a nonprofit corporation. Since AGH was a governmental entity, and Dr. Anoushfar was its employee, Dr. Anoushfar argued that the TCA's two-year statute of limitations applied to Plaintiff's claims against him. Plaintiff's claims were thus untimely because he filed his complaint more than two years after Stone's last visit with Dr. Anoushfar. Plaintiff responded by arguing that AGH maintained its status as a private entity despite ASHD's involvement because, under the operating agreement, CHC maintained substantial power over AGH. Plaintiff provided a number of alternative arguments too, including that Dr. Anoushfar was in fact an independent contractor, that he should be equitably

estopped from asserting the statute of limitations, and that the statute should otherwise be equitably tolled.

{5} The district court granted Dr. Anoushfar's motion. The district court's order contains no statement of undisputed facts or conclusions of law, nor does it provide any reasoning. The district court's oral pronouncement at a hearing on Dr. Anoushfar's motion is similarly devoid of detail. The district court ruled from the bench that AGH fell under the ambit of the TCA and that the complaint was untimely. Plaintiff's claims against Dr. Anoushfar were thus dismissed.

## II. Dr. Lash[1]

{6} On the same day Plaintiff filed the complaint, a summons was issued for Dr. Lash. Three months later, Plaintiff wrote to Dr. Lash's attorney that he "would appreciate it" if the attorney "would accept service of the Eddy County action on [Dr. Lash's] behalf so as to avoid pursuing him in his current medical practice." Dr. Lash's attorney responded that "he was not authorized to accept service." Nearly twelve months after Plaintiff received that response, he paid the sheriff's office in Mohave County, Arizona, to attempt to serve Dr. Lash there. Service was unsuccessful. Another four months passed before Plaintiff tried again, this time at a

---

[1]We take the following facts as they were found in the district court's order granting Dr. Lash's motion to dismiss. Plaintiff has not challenged the district court's findings of fact, and we are bound by them on appeal. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298.

4

new address in Florida. This attempt was also unsuccessful, but Plaintiff learned that Dr. Lash was now residing in California. Roughly a month later Plaintiff finally served Dr. Lash in California, on July 10, 2018, nearly two years after the complaint was filed.

{7}     Dr. Lash moved pursuant to Rule 1-012(B)(5) NMRA to dismiss the claims against him for insufficient service of process, arguing that Plaintiff's delays in effectuating service demonstrated a lack of reasonable diligence. Plaintiff contended in response that his attempts to serve process were reasonable because of Dr. Lash's "refusal" to authorize his attorney to accept service and because Dr. Lash suffered no prejudice by the delay since "no discovery ha[d] taken place" yet. Plaintiff also asserted that the motion to dismiss was "moot," as Dr. Lash had filed an answer to the complaint while the motion was pending. After a hearing, the district court granted Dr. Lash's motion. The district court determined that Dr. Lash's motion was not moot and that he need not "show actual prejudice." The court noted that there was no evidence indicating Dr. Lash intentionally evaded service and that there were months-long periods where Plaintiff seemingly took no action to effectuate service. It concluded that Plaintiff failed to exercise due diligence and Dr. Lash was prejudiced as a result, relying on an opinion from the Court of Appeals for the Fifth Circuit that held delay alone may prejudice a defendant. *See Veazey v. Young's Yacht*

*Sale & Serv., Inc.*, 644 F.2d 475, 477-78 (5th Cir. 1981). Plaintiff's claims against Dr. Lash were accordingly dismissed.

**DISCUSSION**

{8}     We first address whether summary judgment was proper. As we explain below, whether the TCA applies to AGH depends on its involvement with ASHD. While evidence concerning ASHD's powers in its operating agreement with CHC and other evidence of its potential intertwinement with AGH is relevant, the law requires evidence of actual day-to-day interactions between the entities, regardless of how much potential control ASHD may have over AGH. *See Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000-NMSC-030, ¶¶ 35-36, 129 N.M. 677, 12 P.3d 431. In his motion, Dr. Anoushfar did not make any showing as to the actual day-to-day interactions between the entities, and thus did not provide sufficient evidence to establish that AGH is subject to the TCA. Accordingly, the district court erred by holding Plaintiff's claims were time barred by the TCA's two-year statute of limitations. We next address whether Plaintiff's claims against Dr. Lash were properly dismissed. Finding Plaintiff's arguments unpersuasive in light of New Mexico case law on the issue, we conclude that the district court did not abuse its discretion in concluding that Plaintiff failed to serve Dr. Lash with reasonable diligence and dismissing the claims against him.

## I. Motion for Summary Judgment

**{9}** Plaintiff's arguments on appeal regarding the district court's grant of summary judgment mirror those brought before the district court below, namely, that the TCA does not apply because Dr. Anoushfar is not a public employee. Dr. Anoushfar responds by relying on ASHD's powers under the operating agreement and AGH's finances to demonstrate that the TCA does apply. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582; *see* Rule 1-056(C) NMRA. "We review these legal questions de novo." *Self*, 1998-NMSC-046, ¶ 6. "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted).

**{10}** Under the TCA, a plaintiff has two years to bring claims against governmental entities and their employees. Section 41-4-15(A). A "governmental entity" is "the state or any local public body." Section 41-4-3(B). The TCA further defines "local public body" in relevant part as "all political subdivisions of the state and their agencies, instrumentalities and institutions." Section 41-4-3(C). The TCA only

7

applies to public employees who are "acting within the scope of [their] employment and in furtherance of the business of a public entity." *Silva v. State*, 1987-NMSC-107, ¶ 15, 106 N.M. 472, 745 P.2d 380.

{11} New Mexico law currently recognizes two ways in which an entity is considered a governmental entity under the TCA. The first way is when the entity is a governmental entity as a matter of law, either as a result of its particular status or by definition. For example, in *Kreutzer v. Aldo Leopold High School*, this Court held that charter schools in New Mexico are governmental entities subject to the TCA. 2018-NMCA-005, ¶¶ 41-42, 409 P.3d 930. This is because the Charter Schools Act, NMSA 1978, §§ 22-8B-1 to -17.1 (1999, as amended through 2023), and numerous other statutes, equate charter schools with public schools and impose similar requirements on both. *Kreutzer*, 2018-NMCA-005, ¶¶ 35-38. Based on that uniform treatment, this Court concluded that charter schools are governmental entities under New Mexico law. *See id.* ¶ 41; *see also Gebler v. Valencia Reg'l Emergency Commc'ns Ctr.*, 2023-NMCA-70, ¶¶ 2, 9-12, 535 P.3d 763 (holding that a 911 communications center, jointly created by public bodies, was a governmental entity due to its identical duties and powers to provide emergency communications services as a public entity under the Enhanced 911 Act, NMSA 1978, §§ 63-9D-1 to -11.1 (1989, as amended through 2017), and Joint Powers Agreements Act, NMSA 1978, §§ 11-1-1 to -7 (1961, as amended through 2009)); *El Dorado Utils., Inc. v.*

*Eldorado Area Water & Sanitation Dist.*, 2005-NMCA-036, ¶ 25, 137 N.M. 217, 109 P.3d 305 (recognizing that a water and sanitation district, as "a governmental subdivision of the state," is a governmental entity subject to the TCA (internal quotation marks and citation omitted)).

{12}    The second way in which a private entity may be considered a governmental entity is by virtue of the particular relationship between the private entity and the government. In *Cole v. City of Las Cruces*, our Supreme Court determined that the Rio Grande Natural Gas Association was not an instrumentality of Las Cruces. 1983-NMSC-007, ¶¶ 2, 19, 24, 99 N.M. 302, 657 P.2d 629. An agreement between the city and association gave the city the right "to solely operate and maintain the [a]ssociation's entire natural gas transmission and distribution system," and "to supervise, direct and control the employees of the [a]ssociation." *Id.* ¶ 19 (internal quotation marks omitted). Despite those broad powers, the Court concluded that the association was "a private corporation and is not the type of 'instrumentality' contemplated within the context of the [TCA]." *Id.* While the TCA was held to be inapplicable, the Court nevertheless noted that "[t]here may be situations where a private corporation may be so organized and controlled, and its affairs so conducted, as to make it merely an instrumentality or adjunct of a municipality under the terms of the [TCA]." *Id.*

{13}     Analytically, this case falls into the second category. Both parties' arguments focus on the specific relationship between entities, such as AGH's funding and the operating agreement between ASHD and CHC. Insofar as Dr. Anoushfar recognizes that Section 4-48A-9(M) permits ASHD to "lease a hospital to any person, corporation or association for the operation and maintenance of the hospital," that statute is silent on whether such a lease makes the lessee a governmental entity. And Dr. Anoushfar's assertion that "[i]t is in the best interests of ASHD and the community for ASHD [to] ensure that AGH continues to serve as a 'public hospital facility for the benefit of the inhabitants of the district'" is unsupported by the statute he cites, Section 4-48A-3(A), which simply permits the creation of special hospital districts. Whether AGH is a governmental entity turns on the facts.

{14}     The question is *what* facts are required to demonstrate that a private entity is a governmental entity under the TCA. The only authority Plaintiff provides on this issue is *Cole*. Plaintiff contends that, like the defendant in *Cole*, ASHD's retained powers in the operating agreement with CHC are insufficient to make AGH a governmental entity. Dr. Anoushfar turns our attention to *Memorial Medical Center, Inc.*, which is the primary authority he relied on in his motion for summary judgment. In *Memorial Medical Center, Inc.*, our Supreme Court answered what standard must be met before an entity may be considered a "political subdivision" or "local public body," under the Public Works Minimum Wage Act, NMSA 1978, §§ 13-4-10 to -17

(1963, as amended through 2022), and the Procurement Code, NMSA 1978, §§ 13-1-28 to -199 (1984, as amended through 2023). *Mem'l Med. Ctr, Inc.*, 2000-NMSC-030, ¶ 1. After examining New Mexico case law, the Court held that "the standard to be applied is whether under the totality of the circumstances the government entity is so intertwined with the private entity that the private entity has become an alter ego of the public entity." *Id.* ¶ 35. Significantly, that standard was constructed in large part from TCA jurisprudence, including *Cole. Mem'l Med. Ctr., Inc.*, 2000-NMSC-030, ¶¶ 29-30, 33 (discussing *Cole*, 1983-NMSC-007, and *Tompkins v. Carlsbad Irrigation District*, 1981-NMCA-072, 96 N.M. 368, 630 P.2d 767). The TCA's relevant definition of "local public body" is also identical to the definition used in the Procurement Code when *Memorial Medical Center, Inc.*, was decided. *Compare* § 41-4-3, *with* § 13-1-67. Furthermore, nothing in the standard announced by *Memorial Medical Center, Inc.*, or the opinion itself indicates that the standard is limited to the two statutes at issue in that case. Instead, the standard is presented as a generally applicable statement of New Mexico law on the issue of private entities acting like governmental entities, and that standard is in line with our Supreme Court's understanding of governmental entities in *Cole*, 1983-NMSC-007, ¶ 19. For those reasons, we apply the standard set forth in *Memorial Medical Center, Inc.*, here, such that the private entity must, under the totality of the circumstances, be so

11

intertwined with the government entity as to become the government's alter ego for the TCA to apply to the private entity. *See* 2000-NMSC-030, ¶ 35.

{15} Importantly, in *Memorial Medical Center, Inc.*, our Supreme Court rejected the "substantial government involvement" standard used by the district court. *Id.* ¶ 33. Under that standard, a court would balance nine factors to determine whether there is substantial government involvement with the private entity. *See id.* ¶ 35 n.2. Those factors are (1) "government involvement in the promotion of the concept of a contract or project"; (2) "government participation in the funding of the project"; (3) "financial benefits inuring to a government entity"; (4) "the public purpose of the project"; (5) "continuing control over corporate governance, even if it is potential control"; (6) "continuing control over the current or final disposition of the assets that are or will be the product of the contract or project"; (7) "commingled public and private financing"; (8) "whether the activity of the private entity is conducted on publicly owned property"; and (9) "whether the private entity was created by the public entity." *Id.* Our Supreme Court rejected reliance on these factors alone, because they overemphasize potential government involvement without accounting for actual and continuing interactions between the government and the private entity. *See id.* ¶ 36. The Court explained its reasoning as follows:

> Regardless of how much authority a lease potentially gives a government entity to control a private entity, if the government entity does not exercise the authority so as to make the private entity a conduit through which the government acts, then the existing statutes governing

12

public entities ought not apply. On the other hand, if the contract that creates the relationship provides for no control, but in fact the government exercises control, then the existing statutes governing public entities might apply.

*Id.* Although courts may still look to the nine factors indicating government intertwinement with a private entity, the Court in *Memorial Medical Center, Inc.*, made clear that courts "must also examine both the potential relationship created by the legal contract that binds the entities and the *actual day-to-day relationship among them.*" *Id.* ¶ 35 (emphasis added). "[F]orm does not control over substance; substance must control over form." *Id.* ¶ 36.

{16} Applying the standard from *Memorial Medical Center, Inc.*, to this case, Dr. Anoushfar failed to present sufficient undisputed facts to demonstrate that ASHD is so intertwined with AGH so as to become its alter ego. As the movant, Dr. Anoushfar had the burden of making a prima facie case of entitlement to summary judgment. *See Bank of N.Y. Mellon*, 2014-NMCA-097, ¶ 6. Dr. Anoushfar's motion centered entirely on the nine factors above, and provided no evidence concerning ASHD's ongoing, day-to-day interactions with AGH or CHC. Nor does he point to any on appeal, despite once again relying on the standard from *Memorial Medical Center, Inc*. Our review of the record also indicates that the only evidence pertaining to ASHD's and AGH's relationship is the operating agreement with CHC and information about ASHD's finances. But even if the operating agreement provided significant power to ASHD to control AGH, and ASHD's

13

finances contained profits or expenses related to AGH, those facts alone fail to establish the type of actual relationship between the entities necessary to demonstrate that AGH is an alter ego of ASHD. The same stands true even if AGH's board of directors dictates the hospital's daily operations, because those directors are chosen from the community, hospital, and CHC, not ASHD. The district court appeared to recognize this lack of evidence when it continued Dr. Anoushfar's motion pending discovery from Plaintiff concerning just the day-to-day interactions between AGH and ASHD. *See* Rule 1-056(F). However, the discovery responses Plaintiff received had no information on those interactions—ASHD instead reiterated its retained powers pursuant to the operating agreement with CHC. Absent any facts about ASHD and AGH's actual and continuing interactions, Dr. Anoushfar cannot demonstrate that AGH is a governmental entity under the TCA and that TCA's statute of limitations applied to Plaintiff's claims against him. Accordingly, the district court erred in granting summary judgment, and we reverse for further proceedings consistent with this opinion. Because we reverse on those grounds, we do not address Plaintiff's other arguments on appeal related to Dr. Anoushfar's motion for summary judgment.

**II.     Motion to Dismiss for Insufficient Service of Process**

{17}     On appeal, Plaintiff asserts the following to support reversing the district court's dismissal of Dr. Lash: (1) "Plaintiff's office was informed [Dr. Lash's

counsel] would accept service of process," (2) "Dr. Lash's refusal to have his attorney" accept services caused "a nationwide search for Dr. Lash who owns or resided in properties in at least three different states," and (3) "there was no prejudice to Dr. Lash as no discovery ha[d] taken place."[2]

{18}     Courts determine whether a plaintiff exercised reasonable diligence in serving process is "based on a standard of objective reasonableness." *Romero v. Bachicha*, 2001-NMCA-048, ¶ 23, 130 N.M. 610, 28 P.3d 1151 (internal quotation marks and citation omitted). A district court's determination that a plaintiff failed to act with reasonable diligence under Rule 1-004(C)(2), and whether the complaint should be dismissed as a result, is reviewed only for abuse of discretion. *See Martinez v. Segovia*, 2003-NMCA-023, ¶ 29, 133 N.M. 240, 62 P.3d 331. An abuse of discretion occurs if, considering the circumstances before the district court, the court "exceeds the bounds of reason." *Summit Elec. Supply Co. v. Rhodes & Salmon, P.C.*, 2010-NMCA-086, ¶ 6, 148 N.M. 590, 241 P.3d 188 (internal quotation marks and citation omitted).

{19}     Dr. Lash was not served until nearly two years after the complaint was filed, and nearly five years after the underlying allegations in this case. The district court found that there were months-long periods, one as long as fifteen months, without

---

[2] Plaintiff does not renew his argument below that Dr. Lash waived or otherwise mooted his motion to dismiss by filing an answer to the complaint while the motion was pending.

evidence showing Plaintiff made any efforts to effectuate service. The district court also found that there was no evidence indicating that Dr. Lash attempted to conceal himself or avoid service. Plaintiff offers no argument on appeal to undermine the district court's findings, and thus we accept them as true. *See Seipert*, 2003-NMCA-119, ¶ 26 ("An unchallenged finding of the trial court is binding on appeal."). The delay in this case is longer than any delay previous New Mexico opinions have examined and found to be acceptable. *See Martinez*, 2003-NMCA-023, ¶¶ 2, 28-30 (concluding that an eight-month delay that was justified demonstrated reasonable diligence); *Romero*, 2001-NMCA-048, ¶¶ 24-25 (holding that the plaintiff failed to serve the defendant an amended complaint with due diligence where the plaintiff could not justify a thirteen-month delay). Although Plaintiff asserts that he had an agreement with Dr. Lash's attorney to accept service, and that Dr. Lash later refused to authorize his attorney to accept service, the district court found that those assertions were unsupported by the evidence. Plaintiff has merely reiterated those assertions on appeal without offering any evidence to either support them or undermine the district court's finding. Furthermore, Plaintiff fails to cite to any authority or evidence in the record in support of his argument that Dr. Lash was not prejudiced by the delay because "no discovery ha[d] taken place" before Dr. Lash was served. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support

16

in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)); *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the [district] court's actions. Appellant must affirmatively demonstrate its assertion of error."). Given the foregoing, we cannot say that the district court exceeded the bounds of reason by concluding that Plaintiff's actions to effectuate service was not objectively reasonable, and by dismissing his claims against Dr. Lash.

**CONCLUSION**

{20} Because Dr. Anoushfar did not present evidence concerning the day-to-day interactions between ASHD and AGH to demonstrate that AGH is a governmental entity, we reverse the district court's grant of summary judgment dismissing Plaintiff's claims as untimely under the TCA and remand to the district court for further proceedings consistent with this opinion. We affirm the district court's dismissal of Plaintiff's claims against Dr. Lash.

{21}     **IT IS SO ORDERED.**

 

_____
**SHAMMARA H. HENDERSON, Judge**

17

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**ZACHARY A. IVES, Judge**

18