(No. 2946.   April 16, 1924.)
GIBBANY v. FORD, Mayor, et al.

SYLLABUS BY THE COURT.

1. Wards of a municipality are not "political subdivisions" within the intendment and meaning of section

13 of article 5 of the Constitution, which requires all district, county, precinct, and municipal officers to be residents of the political subdivision for which they are elected or appointed.

2. Section 2 of article 7 of the Constitution gives the right to every person who is a citizen of the United States, a resident of and a qualified elector within this state, to hold any public office except as otherwise provided in the Constitution. Section 13 of article 5 requires all district, county, precinct, and municipal officers to be residents of the political subdivisions for which they were elected or appointed. The Legislature has no power to make added restrictions to such right to hold public office.

3. Section 3 of chapter 111, Laws of 1919, which provides that the removal of an alderman from the ward from which he was elected or appointed shall forfeit his office, and a vacancy thereby created is void, as it constitutes a superaddition to the right to hold the office of alderman beyond those prescribed by the Constitution.

Appeal from District Court, Chaves County; Brice, Judge.

Mandamus by J. L. Gibbany against Willis Ford, Mayor of the City of Roswell. Judgment for defendant, and plaintiff appeals. Affirmed.

J. D. Mell, of Roswell, for appellant.

Tomlinson Fort, H. M. Dow, and H. C. Maynard, all of Roswell, for appellee.

OPINION OF THE COURT.

BRATTON, J. F. J. Beck was elected alderman from the Fifth ward of the city of Roswell at the regular election held during April, 1920, and J. C. Gilbert was elected alderman from said ward at the regular election held during April, 1922. Thereafter Beck moved out of said municipality and ceased to be a resident thereof, and Gilbert moved out of the Fifth ward and into the Fourth ward thereof, and is now residing within such Fourth ward. J. L. Gibbany, the appellant herein, instituted this suit in mandamus to compel the mayor and board of aldermen of said city to declare the offices held by Beck and Gilbert vacant, and to take the necessary steps to have their successors elected at the regular election to be held in said city on the first Tuesday in April. Responding to an alternative writ, the appellees contended that the facts

set forth did not constitute a cause of action as to the office held by Gilbert; that such facts did not constitute a vacancy in his office; and, particularly, that section 3 of chapter 111, Laws of 1919, so far as it declares the removal of an alderman from the ward which he represents into another ward within the municipality to constitute a forfeiture of the office, is unconstitutional and void. They further pleaded that all necessary steps looking to the election of a successor to Beck had been taken.

The trial court dismissed the writ in so far as it applied to the office held by Gilbert, and this forms the sole controversy here, no question being further made concerning Beck and the office he formerly held.

[**1-3**] 1. It is expressly provided by section 3 of chapter 111, Laws of 1919, that, where a city, town, or village is divided into wards or political subdivisions for the purpose of voting and government, councilmen, aldermen, and trustees shall be residents of the ward or other subdivision for which they are elected, and that a removal therefrom shall constitute a forfeiture of the office, and shall create a vacancy thereof. The statute provides in this language:

"Where any city, town or village shall be by ordinance or otherwise divided into wards or political subdivisions for the purpose of voting and government, councilmen, aldermen and trustees shall be residents of the ward or other political subdivision for which they are elected, and any councilman, alderman or trustee who shall remove his residence beyond the limits of such ward or subdivision shall thereby forfeit the office to which he was elected, and a vacancy shall be thereby created."

The statute is clear and plain and unequivocally provides that upon an alderman moving out of the ward from which he was elected and into another ward he forfeits and vacates his office. Its constitutionality is the only debatable question presented. Section 2 of article 7 of the Constitution as amended (see page 468, Laws 1921) provides:

"Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any public office in the state except

as otherwise provided in this Constitution. The right to hold public office in the state of New Mexico shall not be denied or abridged on account of sex, and wherever the masculine gender is used in this Constitution, in defining the qualifications for specific offices, it shall be construed to include the feminine gender. Provided, however, that the payment of public road poll tax, school poll tax or service on juries shall not be made a prerequisite to the right of a female to vote or hold office."

[4] It appears from this provision that every citizen of the United States who is a legal resident of this state and a qualified voter herein shall be qualified to hold any public office within this state, except as otherwise provided in the Constitution. The expression "qualified to hold any public office within this state," as used in the constitutional provision just quoted, means "eligible to hold any public office within this state." Board of Commissioners v. District Court (N. M.) 223 Pac. 516. So that the provision of the Constitution as previously interpreted by this court expressly provides that every citizen of the United States who is a resident of this state and a qualified voter herein shall be eligible to hold any public office within the state, except as otherwise provided in the Constitution. We must therefore search the Constitution to ascertain what limitations are therein contained which make the removal of an officer from one ward into another a forfeiture of the right to hold his office with the consequential vacancy thereof. The only provision to be found in the Constitution having in the least to do with this situation is section 13 of article 5, which provides:

"All district, county, precinct and municipal officers, shall be residents of the political subdivision for which they are elected or appointed."

It therefore becomes apparent that the only restriction against the right of every citizen of the United States who is a resident of and a qualified voter within this state to hold any public office is that all district, county, precinct, and municipal officers shall reside within the political subdivision for which they were elected or appointed. The question presented, then, is whether a ward within a city, town, or village is a political subdivision within the intendment and

meaning of the Constitution. If it is not, then residence within the municipality meets the constitutional requirement, and the Legislature has no power to add restrictions upon the right to hold office beyond those provided in the Constitution, because the constitutional provision is not a negative one, providing that no person shall be eligible to hold an office unless he possess certain qualifications, as is often the case in other states, but is a positive provision, giving the right to every person possessing the qualifications therein set forth to hold office, except as otherwise provided in the Constitution itself. Manifestly, therefore, the Legislature is without power to make added restrictions as a qualification to the right to hold the office of alderman. To permit it to do so would authorize the superaddition of requirements to hold office beyond those provided by the Constitution. We have recently so held. Board of Commissioners v. District Court, supra.

In determining whether wards are political subdivisions we must keep in mind our recent holding that aldermen are not elected by the voters of their respective wards, but by the voting citizenry of the city at large. Wright v. Closson (N. M.) 224 Pac. 483, recently decided, and not yet [officially] reported. There is therefore no legal entity to wards for the purpose of electing aldermen. Under the laws of this state as they now exist, wards within a municipality exercise no governmental functions. They are not political entities for any governmental purposes, and they possess no powers of local self-government. Cities, towns, and villages are divided into wards in order to obtain more convenient representation on the city government, but all powers of local self-government in such municipalities, under the present status of the law, are vested in the council or board of aldermen. Wards are not entities for voting purposes; they do not even elect their own aldermen, but must join with the entire voting population of the city. We know of no internal affair of a governmental character which is controlled by the inhabitants of one ward acting singly, alone, and separately from the remainder of the inhabitants of such municipality. Under such circumstances, they cannot be political subdivisions,

because the very term implies a division of the parent entity for some governmental purpose, a thing which a ward does not have. In order to be political subdivisions, they must be formed or maintained for the more effectual or convenient exercise of political power within certain boundaries or localities, to whom the electors residing therein are, to some extent, granted power to locally self-govern themselves. We know of no such powers now vested in the wards of a municipality, and counsel for appellant has been unable to suggest any such.

In State ex rel. Pell v. Mayor and Council of Newark, 40 N. J. Law, 71, this is said:

"Wards, within themselves, do not possess any power of local government; they are erected exclusively for the purpose of securing representation in the city government. They merely constitute a convenient territorial division of the city, to enable the inhabitants to select representatives to regulate their internal affairs. The common council provides for the lighting of the streets, the maintenance of the poor, the support of the police department, and all other matters affecting the internal affairs of the city."

And in the later case from that court, State et al. v. Drainage and Water Commissioners, 41 N. J. Law, 154, this was said:

"The political divisions of the state are those which are formed for the more effectual or convenient exercise of political power within the particular localities. Originally, counties and townships in which a uniform state policy is observable composed this class almost or quite exclusively. Then, as population became denser in certain places, and there was added to this common design a special necessity for local government different from that proper to more rural districts, villages, towns and cities were constituted, and, as these were separated by their charters of incorporation from the townships of which they had before been part, and absorbed their functions, they also became political divisions. In these institutions, therefore, must be discovered, the essential characteristics of their class, and they will be such common and prominent features as have coexisted with these organizations throughout their history, and are not possessed by other bodies of legislative creation which stand outside of the same category. These distinctive marks are, I think, that they embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions, and that to the electors residing within each is, to some extent, committed the power of local gov-

ernment, to be wielded either mediately or immediately, within their territory, for the peculiar benefit of the people there residing."

A case which we consider in point is State ex rel. Childs v. Holman et al., 58 Minn. 219, 59 N. W. 1006. The facts there are that the statute in question provided for the election of nine assemblymen of the city of St. Paul; that they should be elected at large from the body politic of said municipality; that four of them should reside east of Wabasha and Rice streets and north of the Mississippi River; that four of them should reside west of Wabasha and Rice streets and north of the Mississippi River; that the remaining one should reside in the Sixth ward thereof. The constitutional provision of that state with respect to the right to hold public office was section 7 of article 7, which provides:

"Every person who by the provisions of this article shall be entitled to vote at any election shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this Constitution, or the Constitution and laws of the United States."

It was held by the Supreme Court that the statute imposed greater restrictions upon the right to hold office than the Constitution permitted, and was therefore void. This was said:

"The remaining question is whether this provision of the city charter imposes greater restrictions upon eligibility, or adds qualifications for eligibility additional to those prescribed by the Constitution. It seems to us that they do, and that is the way we think it would naturally strike the common sense of men. The situation, plainly stated, is just this: All the electors of the city may vote for all nine assemblymen, but no elector is eligible to any of these offices except the four or one, as the case may be, belonging to the district in which he resides. We cannot see this in any other light than as an attempt to impose a restriction or limitation upon eligibility which is equivalent to imposing a qualification for election in addition to those fixed by the Constitution. It is urged with a good deal of plausibility that this provision of the charter does not render any elector ineligible to the office of assemblyman, for every one is eligible either to one of the offices included in one or the other of the two groups of four, or to

the single office pertaining to the Sixth ward, and therefore no elector is deprived of any substantial constitutional right. The very subtility and refinement of reasoning resorted to in support of this proposition tends to create doubt as to its soundness. We cannot view this provision of the charter otherwise than as imposing a limitation upon or adding a condition to eligibility not permitted by the Constitution."

The similarity of the constitutional provision of that state with that of this state we now have before us, and the similarity, in effect, of the two statutes make the case of peculiar and controlling force. It is in point, and presents reason and logic which meet with our approval. To permit the Legislature to say that a person who resides within a municipality cannot hold the office of alderman unless he also resides within the ward he represents authorizes a restriction and an added eligibility to hold that office, which the Constitution in plain terms denies. No such superaddition can be made effective until such time as the Legislature confers upon wards of a city, town, or village some powers or functions of local self-government, so that they may be said to be political subdivisions. When that time shall have come, perhaps a law of this kind may be valid; but so long as wards are completely shorn of any functions of self-government, and do nothing in the way of discharging any such powers or functions, they are not such political subdivisions as the Constitution comprehends or contemplates.

The appellant relies strongly upon the case of State ex rel. Hartford v. Craig, 132 Ind. 54, 31 N. E. 352, 16 L. R. A. 688, 32 Am. St. Rep. 237, to sustain his contention. The Constitution of the state of Indiana provided that all county, township, and town officers shall reside within their respective counties, townships, and towns, and it was held that a statute is valid which provided that no person should hold the office of councilman unless at the time he was elected he resided within the ward from which he was elected, and in case of a removal of any · such councilman from such ward the common council should have the power to declare such office vacant. The case is clearly distinguishable from the one now before us. It was there held that the Legislature had the power to pro-

vide additional requirements, conditions, or restrictions upon the right to hold office, so long as they did not violate the constitutional provision in question. That constitutional provision did not in express terms give nor grant the right to every person residing within the county, township, or town who was a qualified voter therein to hold any public office within such political subdivisions. It merely said that no person should hold office unless he resided therein. The case merely holds that the Legislature may prescribe added qualifications if they do not run afoul of any of those prescribed by the Constitution. But here the Constitution gives the right to every person meeting the qualifications prescribed in the Constitution to hold any public office, and to say that the Legislature may restrict that right by providing that, although a person resides within a municipality, he cannot hold the office of alderman unless he meets still another requirement entirely beyond those set forth in the Constitution, is too obviously unconstitutional to warrant serious argument.

The trial court correctly disposed of the case, and the judgment should therefore be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.