12 P.3d 431

2000-NMSC-030

**MEMORIAL MEDICAL CENTER, INC., Plaintiff–Appellant,**

v.

**TATSCH CONSTRUCTION, INC., Wooten Construction Co., and Ray Ward & Sons, Inc., Defendants–Appellees,**

and

New Mexico Department of Labor, Labor and Industrial Division, and State of New Mexico ex rel. Attorney General Patricia A. Madrid, Intervenors–Defendants–Appellees.

No. 26,082.

Supreme Court of New Mexico.

Oct. 16, 2000.

Reeves, Chavez, Greenfield & Walker, P.A., Barney James Reeves, CaraLyn Banks, Las Cruces, NM, Eaves, Bardacke, Baugh, Kierst & Kiernan, P.A., Paul Bardacke, Kerry Kiernan, Albuquerque, NM, for Appellant.

Law Offices of K. Lee Peifer, K. Lee Peifer, Angela Cornell, Albuquerque, NM, for Appellees.

Patricia A. Madrid, Attorney General, Patrick T. Simpson, Christopher D. Coppin, Elizabeth A. Glenn, Assistant Attorneys General, Santa Fe, NM, for Intervenors.

Sutin, Thayer & Browne, P.C., William R. Brancard, Santa Fe, NM, for Amicus Curiae Association of Commerce and Industry of New Mexico.

Youngdahl & Sadin, P.C., Shane Youtz, Albuquerque, NM, for Amici Curiae ACORN and AFL–CIO.

## OPINION

MINZNER, Chief Justice.

{1} Appellant Memorial Medical Center Incorporated (MMCI), a private corporation,

challenges the district court's holding that it is subject to the Public Works Minimum Wage Act (PWMWA), NMSA 1978, §§ 13–4–10 to –17 (1963, as amended through 1999), and the Procurement Code (PC), NMSA 1978, §§ 13–1–28 to –199 (1984, as amended through 1999). MMCI argues the district court applied the wrong standard in determining the applicability of the PWMWA and the PC and contends that under the correct standard it is not subject to either the act or the code. The Court of Appeals certified this case pursuant to NMSA 1978, § 34–5–14(C)(2) (1972), which allows the Court of Appeals to certify matters that involve "an issue of substantial public interest that should be determined by the supreme court." This case requires us to identify the appropriate standard to be used in determining whether private non-profit corporations that lease hospitals from government entities meet the definition of "political subdivision," § 13–4–11, or "local public bod[y]," § 13–1–30, and are therefore subject to the above acts. We hold the standard to be applied when determining whether a private entity should be considered a "political subdivision," § 13–4–11, or "local public bod[y]," § 13–1–30, is whether under the totality of the circumstances the private entity is so intertwined with a public entity that the private entity becomes an alter ego of the public entity. Because the district court applied a different standard, we remand for further proceedings.

## I.

{2} In the fall of 1995, the City of Las Cruces (City), Dona Ana County (County), and Memorial Medical Center (Hospital) initiated discussions in an attempt to insure the survival of the Hospital, which faced financial pressures. After extensive discussions among the City, the County, New Mexico State University, and the Hospital, the parties executed a long-term lease with MMCI. In April of 1998, MMCI began operating the Hospital.

{3} Prior to executing the lease, MMCI obtained approval from the State Board of Finance. In March 1998, the office of the Attorney General (AG) provided an advisory letter to a member of the state legislature concerning the applicability of the Open Meetings Act (OMA), the Inspection of Public Records Act (IPRA), and the PC to MMCI. The AG concluded that MMCI would not be subject to any of the above statutes unless the government's control of the corporation was sufficient to make the corporation the "alter ego" of the government. In September 1998, the AG provided a letter to the New Mexico Foundation for Open Government concerning the applicability of the OMA, IPRA, and "all other laws applicable to governmental entities;" that letter concluded these statutes were not applicable. Finally, the architect and project manager for the MMCI construction project spoke with an employee of the Department of Labor (DOL); after hearing a description of MMCI, the employee agreed that the PWMWA probably did not apply.

{4} In the fall of 1998, MMCI initiated a large construction project that involved renovating the main hospital facility and constructing a new outpatient facility. The unsuccessful bidders on MMCI's construction project challenged the award. They claimed MMCI was public and was required to comply with the PWMWA and the PC. In September 1998, MMCI filed an action for a declaratory judgment seeking a declaration that it was not subject to either the act or the code. The court allowed the DOL to intervene in its capacity as administrator of the PWMWA and subsequently allowed the AG to intervene as a separate party to the action to represent the public interest in the matter, particularly those issues related to the PC. The court also granted a request by the AG for a temporary restraining order that enjoined MMCI from proceeding with its construction projects. Before trial, the AG moved to exclude parol evidence of the parties' intent in executing the lease. The district court determined the lease was unambiguous on its face and granted the motion.

{5} Trial on the merits and a hearing on a permanent injunction were consolidated. At that hearing, the court again determined that the lease was unambiguous as a matter of law and concluded that MMCI had not rea-

sonably relied on communications by the State with third parties. Additionally, the court ruled that the standard to be applied when determining whether a private entity is a political subdivision or a local public body is whether there is substantial government involvement with the private entity. Finally, the court held that both the PWMWA and the PC are applicable to MMCI. The court entered judgment against MMCI and enjoined it from proceeding with construction at both sites until it had obtained a prevailing wage determination from the DOL. The court further enjoined MMCI from proceeding with the award of contracts for construction at the main hospital site and from awarding additional contracts for construction at the new outpatient facility until or unless contracts were awarded in compliance with the PC.

{6} This Court subsequently denied both a writ of superintending control and a writ of prohibition seeking a stay of the district court's order. The district court also denied a stay. The Court of Appeals, prior to certifying this case, granted a stay of the court's order with respect to the application of the PWMWA but denied a stay with respect to the application of the PC. On appeal, MMCI argues that: (1) it does not fall within the definition of a "political subdivision," § 13–4–11, or "local public bod[y]," § 13–1–30, and retains its status as a private corporation based upon established New Mexico law; (2) the district court erred by not admitting testimony to establish the ambiguity of the phrase "ultimate control" as used in the lease; and (3) MMCI detrimentally relied upon the opinion of the AG and the DOL, and therefore the State is equitably estopped from claims to the contrary.

{7} As amici, the Association of Community Organizations for Reform Now (ACORN) and the American Federation of Labor–Congress of Industrial Organizations (AFL–CIO) urge this Court to affirm the district court's

application of the statutes at issue. The Association of Commerce and Industry of New Mexico (ACI) has filed an amicus brief in support of MMCI.

{8} We first address whether the State should be equitably estopped from claiming that MMCI is subject to the PWMWA and the PC. We then address the court's evidentiary ruling. Finally, we address the merits of the arguments for and against the district court's ruling.

## II.

{9} MMCI contends it relied on statements from representatives of the AG and the DOL that it was not required to comply with the PC or the PWMWA before initiating construction.[1] As such, MMCI argues that the State should be equitably estopped from claiming that MMCI is subject to the acts. Since resolution of the estoppel issue in favor of MMCI would likely render the remaining issues moot, we address this issue first. In order to find equitable estoppel the following facts must be established as to the party estopped:

(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts.

*Lopez v. State*, 1996–NMSC–071, ¶ 18, 122 N.M. 611, 930 P.2d 146 (quoted authority omitted). The following elements must be shown as to the party claiming estoppel:

(1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based

1. Appellees assert that MMCI inappropriately raises the doctrine of estoppel in this case because the case does not stem from the assertion of any right by the AG or DOL since this is an action for declaratory judgment. The doctrine of equitable estoppel, however, is appropriately raised by the initiator of a declaratory judgment

action. *See, e.g., Las Cruces Urban Renewal Agency v. El Paso Electric Co.*, 86 N.M. 305, 523 P.2d 549 (1974) (allowing the initiator of a declaratory judgment action to raise the claim of equitable estoppel against a public body corporation). MMCI, therefore, may raise the doctrine of equitable estoppel in this case.

thereon of such a character as to change his position prejudicially.

*Id.* (quoted authority omitted). In *Gonzales v. Public Employees Retirement Bd.*, 114 N.M. 420, 427, 839 P.2d 630, 637 (Ct.App. 1992), the Court noted, "Misrepresentations contrary to the material facts to be relied on, even when made innocently or by mistake, will support application of the doctrine." Therefore, the good faith of the AG and the DOL is not dispositive.

{10} When determining whether to apply estoppel against the State, we must first consider that "[e]stoppel is rarely applied against the State and then only in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it." *Wisznia v. Human Serv. Dep't*, 1998–NMSC–011, ¶ 17, 125 N.M. 140, 958 P.2d 98. Because the AG's conduct does not rise to the level of "a shocking degree of aggravated and overreaching conduct," estoppel in this case is only available against the State "where right and justice demand" it. *Id.*

{11} In support of the argument that "right and justice demand" estoppel, *id.*, MMCI cites *Gonzales*, a case in which state employees relying on the advice of the Public Employee Retirement Board (PERB) left their state jobs and took jobs with local governments in order to receive greater retirement benefits. 114 N.M. at 421, 839 P.2d at 631. Subsequently, the PERB changed its position and attempted to prevent the employees from receiving the benefits. The Court of Appeals found that the statements made by PERB officials regarding retirement benefits were mistaken statements of material fact on which the employees detrimentally relied. *See id.* at 426–27, 839 P.2d at 636–37. The Court remanded to the district court to determine if the other elements of equitable estoppel were met. *See id.* at 428, 839 P.2d at 638.

{12} MMCI's reliance on *Gonzales* is misplaced. Unlike *Gonzales*, which involved definite factual statements about the amounts of retirement benefits due certain public employees under PERA, this case involves equivocal legal opinions about whether the statutes would apply to MMCI. Moreover, unlike the employees in *Gonzales,* MMCI did not exclusively rely on the State's representations; it relied in part on the advice of national experts.

{13} As a general rule, "statements of opinion on a matter of law raise no estoppel where the facts are equally well known to both parties." *Rainaldi v. Public Employees Retirement Bd.*, 115 N.M. 650, 657, 857 P.2d 761, 768 (1993). In this case, the statements in the AG's letter were legal opinions, not statements of fact, and MMCI had equal or better knowledge of the facts than the State. However, there is an exception to the general rule if "the advisor has actual or professed special knowledge." *Id.* at 658, 857 P.2d at 769. That exception does not apply in this case. The AG did not have special knowledge about whether the PWMWA and PC would apply to MMCI. Even if we were convinced that the AG had special knowledge, MMCI failed to prove that the State intended or expected MMCI to rely on any of the statements it made. The State made no specific statements directly to MMCI or its agents about whether the statutes would apply to MMCI. Although an associate in charge of MMCI's construction project spoke directly with the DOL, his questions were too general to have put DOL on notice that MMCI would rely on its answers.

{14} In *City of Santa Rosa v. Jaramillo,* 85 N.M. 747, 750, 517 P.2d 69, 72 (1973), this Court held that the AG's opinions are not binding on the courts. MMCI must have been aware that the AG's letters, even assuming they should be treated in the same manner as opinions, had limited legal effect. For all of these reasons, we conclude the elements of estoppel have not been met and this is not one of those exceptional circumstances in which estoppel can be used to prevent the State from taking a position contrary to that which it had taken on a prior occasion. *See Wisznia,* 1998–NMSC–011, ¶ 17, 125 N.M. 140, 958 P.2d 98.

### III.

{15} Before trial, the AG moved to exclude evidence regarding the intent of

the parties when executing the lease. The AG argued that this kind of testimony was parol evidence and was only admissible if used to clear up ambiguities in the lease. MMCI argued the lease was ambiguous and specifically pointed to the term "ultimate control," which was used in paragraph B of the recitals section of the lease. The relevant portion states:

> The City, County and Board of Trustees of Memorial have determined that it is in the best interest of providing quality health care delivery to residents of the Hospital's service area, . . . to transfer the operation of the Hospital by lease to a locally-controlled New Mexico nonprofit corporation, subject to the retained legal title and ultimate control of the Hospital by the City and County, as more specifically provided under the terms and conditions of this Lease.

{16} The parol evidence rule "bars admission of evidence extrinsic to the contract to contradict and perhaps even supplement the writing." *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991). The rule, however, allows evidence "of circumstances surrounding the transaction . . . to aid the court in determining whether chosen terms are clear." *Id.* at 508, 817 P.2d at 242. When "determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." *Id.* at 508–09, 817 P.2d at 242–43. If a court reviewing the extrinsic evidence proffered by a party determines that the evidence does not show that a term is unclear, the court is not obliged to admit the evidence to interpret the contract. *See id.* at 508, 817 P.2d at 242.

{17} After a hearing, the district court ruled the lease was not ambiguous as a matter of law and therefore held it would not consider testimony regarding the intent of persons executing the lease. The court, however, did allow MMCI to proffer testimony as to this issue for the purposes of appeal.

{18} Whether ambiguity exists is a question of law; therefore, this Court re-

views the district court's decision to exclude extrinsic evidence de novo. *See Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 1999–NMSC–006, ¶ 28, 127 N.M. 1, 976 P.2d 1. We conclude that the phrase "ultimate control" as used in the lease does not make the lease ambiguous. Recital B clearly states that the meaning of "ultimate control" is to be defined by the substantive provisions of the lease. The term is therefore only significant to the extent it is further explained by the specific terms of the lease. In fact, the district court did not rely on the term in its findings; the court relied instead on the specific provisions of the lease in determining the issue of control. Evidence contradicting a term, especially a term which explicitly states it is to be defined by the contract itself, is still prohibited under New Mexico's parol evidence rule. *See Mark V, Inc. v. Mellekas*, 114 N.M. 778, 782, 845 P.2d 1232, 1236 (1993). We therefore affirm the district court's ruling excluding the evidence.

{19} We note, however, that the ruling we affirm was limited to evidence offered to show the intent of the parties when executing the lease. This holding does not limit introduction of evidence on actual relationships among the parties. For example, evidence that the parties did not intend, when executing the lease, to enforce certain provisions would not be admissible; on the other hand, evidence that the full extent of the control allowed under the lease is contingent on events that have not occurred would be relevant and admissible.

**IV.**

{20} Finally, we address Appellant's primary contention that the district court erred by determining that the PWMWA and the PC apply to MMCI and that substantial government involvement was the applicable legal standard under those statutes. When reviewing the decision of a district court, this Court must be deferential to findings of fact by the court, but we review conclusions of law de novo. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996). The district court's statutory construction is a conclusion of law we review de novo.

{21} MMCI argues that cities and counties have statutory authority to lease hospitals to private corporations under NMSA 1978, § 3–44–3 (1965). This is true, but not dispositive. The ability of the City and County to lease the Hospital to MMCI is undisputed. We agree that cities and counties are free to lease hospitals to private corporations. The issue, however, is whether the relationships among the parties are such that the PC and the PWMWA, properly construed, are applicable to MMCI.

{22} When answering this question, the district court properly looked to the purpose behind the PC and the PWMWA as well as the statutory language. *See Raton Pub. Serv. Co. v. Hobbes*, 76 N.M. 535, 539, 417 P.2d 32, 35 (1966). The court determined MMCI was under a duty to comply with both the PC and the PWMWA because the relationships among the parties met a standard of substantial government involvement, a standard which seems to have been adapted from the standard under Alaska law. *See Western Alaska Bldg. & Constr. Trades Council v. Inn–Vestment Assocs.*, 909 P.2d 330, 334 (Alaska 1996) (holding the standard to be applied when determining whether a project constitutes "public construction," thus making it subject to Alaska's Little Davis-Bacon Act, is significant state involvement). Both parties concede there is a lack of clarity in New Mexico case law on the appropriate standard to be applied. Each side relies on one or more cases to support its position. We agree with both parties that we do not need to look beyond New Mexico case law to find the answer. We also believe that the district court erred in its reliance on out-of-state authority.

{23} MMCI contends the appropriate standard is contained in *Akopiantz v. Board of Comm'rs*, 65 N.M. 125, 333 P.2d 611 (1958). *Akopiantz* analyzed the legal status of a private corporation that had leased a hospital from Otero County; the question was whether the corporation's personnel decision followed the appropriate process. *See id.* at 126, 333 P.2d at 611–12. The Court suggested that if the hospital was a public entity, the plaintiff was entitled to due process. *See id.* The Court in *Akopiantz* enunciated a stan-

dard that if, under the terms of a lease, a corporation is "invested with exclusive right of control and management," then it is a private entity. *Id.* at 127, 333 P.2d at 613. We believe that *Akopiantz*'s emphasis on the "right of control and management," *id.*, is informative but not dispositive; in that case, no statutory interpretation was required. The Court made a general distinction between private and public entities for the purpose of determining a worker's right to due process. The question of the meaning of a "political subdivision," § 13–4–11, or "local public bod[y]," § 13–1–30, under the PWMWA and the PC was not before this Court.

{24} We believe, as did the district court, that the question of whether MMCI must comply with the PWMWA and the PC is essentially one of legislative intent. Section 13–4–11 of the PWMWA states that the statute applies to certain contracts "to which *the state or any political subdivision* thereof is a party." (Emphasis added.) The PC applies to procurement actions by *local public bodies*, which are defined in Section 13–1–67 as including "every *political subdivision* of the state and the agencies, *instrumentalities* and institutions thereof." (Emphasis added.) In determining the applicability of the PWMWA and the PC, this Court must decide whether MMCI is a political subdivision within the meaning of the PWMWA or a local public body within the meaning of the PC.

{25} The stated purposes of the PC "are to provide for the fair and equitable treatment of all persons involved in public procurement, to maximize the purchasing value of public funds and to provide safeguards for maintaining a procurement system of quality and integrity." NMSA 1978, § 13–1–29(C). The PC also protects "against the evils of favoritism, nepotism, patronage, collusion, fraud, and corruption in the award of public contracts." *Planning and Design Solutions v. City of Santa Fe*, 118 N.M. 707, 710, 885 P.2d 628, 631 (1994). The PC states that it "shall be liberally construed and applied to promote its purposes and policies." § 13–1–29(A).

{26} The PWMWA is modeled after the federal Bacon–Davis Act. *See City*

*of Albuquerque v. Burrell,* 64 N.M. 204, 208, 326 P.2d 1088, 1090 (1958). It applies to every contract in excess of $20,000 for construction, alteration, demolition, or repair of public building, public works, or public roads that includes the employment of mechanics or laborers. *See* § 13–4–11. If the PWMWA applies, the workers are entitled to wages, determined by the DOL, that correspond to the prevailing wage for similar work in the same locale. *See id.* This prevents foreign contractors from using itinerant workers to underbid local contractors. The purposes behind the act are remedial; generally, remedial statutes are to be read broadly. *See Rodman v. Employment Sec. Dep't,* 107 N.M. 758, 761, 764 P.2d 1316, 1319 (1988); *cf. Armijo v. Department of Health & Env't,* 108 N.M. 616, 618, 775 P.2d 1333, 1335 (Ct.App.1989) (holding that remedial statutes must be interpreted in light of their intended purposes). It is therefore our obligation to read both statutes broadly so as to effectuate the intent of the legislature.

{27} The first rule of statutory construction is that "[t]he plain language of a statute is the primary indicator of legislative intent." *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). "[W]ords are presumed to have been used in their ordinary sense...." *Madrid v. University of Cal.,* 105 N.M. 715, 716, 737 P.2d 74, 75 (1987). The plain language of neither statute necessarily supports its application to private corporations such as MMCI. This, however, does not end our inquiry because "[c]ases manifesting ... a willingness to depart from the literal wording of a statute also appear frequently in the caselaw of this state." *State ex rel. Helman v. Gallegos,* 117 N.M. 346, 351, 871 P.2d 1352, 1357 (1994). In interpreting statutes, we seek to give effect to the legislature's intent and "will not rest our conclusions upon the plain meaning of the language if the intention of the legislature suggests a meaning different from that suggested by the literal language of the law." *Cummings v. X–Ray Assocs.,* 1996–NMSC–035, ¶ 45, 121 N.M. 821, 918 P.2d 1321.

{28} In order to decide whether the district court applied the correct standard, we first examine the standards previously employed by New Mexico appellate courts in making similar determinations. We have indicated that *Akopiantz* is informative but not dispositive. Other cases are similarly informative but not dispositive. For example, the term "political subdivision" was defined in *Gibbany v. Ford,* 29 N.M. 621, 626, 225 P. 577, 579 (1924), for the purpose of understanding the limitations of Article V, Section 13 of the New Mexico Constitution, which states, "All district, county, precinct and municipal officers, shall be residents of the political subdivision for which they are elected or appointed." *Id.* at 624, 225 P. at 578. *Gibbany* held that "[i]n order to be political subdivisions, [the entities] must be formed or maintained for the more effectual or convenient exercise of political power within certain boundaries or localities." *Id.* at 626, 225 P. at 579.

{29} Our case law, however, also suggests a broader interpretation of political subdivision than that formulated in *Gibbany,* one which reflects the changing relationship between private corporations and government entities. For instance, in *Tompkins v. Carlsbad Irrigation Dist.,* the Court of Appeals found that an irrigation district was a political subdivision and therefore a local public body under the Tort Claims Act. 96 N.M. 368, 370, 630 P.2d 767, 769 (Ct.App.1981). In reaching its holding, the Court stated that irrigation is a public use and primarily relied on the fact that irrigation districts are organized for the purpose of exercising a public function and not for private gain. *See id.*

{30} In *Cole v. City of Las Cruces,* this Court was asked to determine whether a private corporation was a political subdivision or an instrumentality of a political subdivision under the Tort Claims Act. 99 N.M. 302, 657 P.2d 629 (1983). The Rio Grande Natural Gas Association had entered into an agreement, which provided that the City was "'to solely operate and maintain the Association's entire natural gas transmission and distribution system.'" *Id.* at 305, 657 P.2d at 632. The agreement also provided that "'the City shall have the right to supervise, direct and control the employees of the Association.'" *Id.* Nevertheless, the Court held that

the Association was not an instrumentality of the State "even though the City totally directed its operation," *Armijo,* 108 N.M. at 621, 775 P.2d at 1338, because the Association was "a private corporation and is not the type of 'instrumentality' contemplated within the context of the Act." *Cole,* 99 N.M. at 305, 657 P.2d at 632. In doing so, the Court recognized "[t]here may be situations where a private corporation may be so organized and controlled, and its affairs so conducted, as to make it merely an instrumentality or adjunct of a municipality." *Id.* (citing *Pacific Can Co. v. Hewes,* 95 F.2d 42 (9th Cir.1938) (deciding whether one corporation controls and operates another is enough to establish agency relationship)).

{31} In *Raton,* this Court considered whether a private utility system was "a governing body of a municipality, or a governmental board or commission of a subdivision of the state, supported by public funds" so as to be subject to the OMA. 76 N.M. at 537–38, 417 P.2d at 33. The Raton Public Service Company was incorporated in New Mexico and operated the electric utility system in the City of Raton. *See id.* at 537, 417 P.2d at 33. The stock was issued in the name of three trustees who held it for the sole benefit of the City of Raton. *See id.* The board of directors had five members: the mayor, the city commissioner, and three others elected by the trustees. *See id.* "The property making up the electric utility system [was] owned by the city." *Id.* The Court in *Raton* found that the company must comply with the statute. *See id.* at 540, 417 P.2d at 35–36. The Court held that "a thing which is within the object, spirit and meaning of the statute is as much within the statute as if it were within the letter." *Id.* at 539, 417 P.2d at 35 (quoting *Glick v. Trustees of Free Pub. Library,* 2 N.J. 579, 67 A.2d 463, 465 (1949) (internal quotation marks omitted)).

{32} In determining whether the PC and the PWMWA were applicable to MMCI, the district court applied a legal standard, that of substantial government involvement, never before used in this context in New Mexico. Appellees contend that the standard applied by the district court was essentially the same standard used in *Cole* when this Court stated, "There may be situations where a private corporation may be so organized and controlled, and its affairs so conducted, as to make it merely an instrumentality or adjunct of a municipality." 99 N.M. at 305, 657 P.2d at 632. We reject this premise. When determining whether the utility company was an instrumentality of the City, *Cole* relied on two cases: one involving the concept of "piercing the corporate veil" and the other involving agency liability. *See id.* Neither body of law is synonymous with the standard of substantial government involvement applied by the district court. Furthermore, in *Cole* the City "operate[d] and maintain[ed] the Association's entire natural gas transmission and distribution system" and had "the right to supervise, direct and control the employees of the Association." *Id.* These factors would surely amount to substantial government involvement, yet *Cole* found the Association was not subject to the New Mexico Tort Claims Act. *See id.*

{33} We conclude that the standard of substantial government involvement is not the appropriate standard under our case law. The standard formulated by the district court is so broad that substantial government involvement would apply to private entities that clearly do not fall within the purview of either the PC or the PWMWA. Moreover, existing New Mexico case law suggests a different standard. *See Cole,* 99 N.M. at 305, 657 P.2d at 632; *Raton,* 76 N.M. at 539, 417 P.2d at 35.

{34} *Raton* stands for two propositions. First, when necessary, substance should prevail over form in order to effectuate the legislature's intent. *See Raton,* 76 N.M. at 539, 417 P.2d at 35. Second, a private organization, despite its name or legal status, may have so many public attributes it can no longer be considered private. *See id. Cole* informs us that a private entity may be controlled, organized, and conducted in such a manner that it becomes an arm of a public entity. 99 N.M. at 305, 657 P.2d at 632. It is therefore our view that under current New Mexico law there are circumstances in which a private corporation must be deemed a political subdivision or a local public body because the private entity has so many public attrib-

utes, is so controlled and conducted, or otherwise is so affiliated with a public entity that as a matter of fairness it must be considered the same entity.

{35} Based on these cases, we conclude that the standard to be applied is whether under the totality of the circumstances the government entity is so intertwined with the private entity that the private entity has become an alter ego of the public entity. When conducting this inquiry, courts must keep in mind the Legislature's purpose in enacting the statutes. *See Raton,* 76 N.M. at 539, 417 P.2d at 35; *see also Lycoming County Nursing Home Ass'n, Inc. v. Commonwealth,* 156 Pa.Cmwlth. 280, 627 A.2d 238, 244 (1993) (concluding that "the public policy advanced by the [prevailing wage act] would be defeated if [the court allowed] the County to rely on the independence of the Association"). As discussed earlier, both the PWMWA and PC should be construed broadly to effectuate their purposes. Additionally, courts must not allow narrow definitions or legal fictions to prevail over the intent of the legislature. *See Raton,* 76 N.M. at 539, 417 P.2d at 35. In evaluating such claims, courts are free to consider such factors as those utilized by the district court [2] in applying the standard of substantial government involvement. On remand, however, the court must also examine both the potential relationship created by the legal contract that binds the entities and the actual day-to-day relationship among them. We will remand to permit the district court to make new findings of fact and enter new conclusions of law in light of this opinion.

{36} Regardless of how much authority a lease potentially gives a government entity to control a private entity, if the government entity does not exercise the authority so as to make the private entity a conduit through which the government acts, then the existing statutes governing public entities ought not apply. On the other hand, if the contract that creates the relationship provides for no control, but in fact the government exercises control, then the existing statutes governing public entities might apply. Under the standard we identify, form does not control over substance; substance must control over form. *Cf. Lycoming,* 627 A.2d at 244 (holding a private entity was an alter ego of a county and subject to Pennsylvania's Prevailing Wage Act because the county "controlled the project from its inception" and "attempts to disassociate the County from the Association did not overcome the fact that the Association was the instrumentality of the County.") We recognize that privatization creates risks that traditional protections for workers will not be available, but those risks can be avoided under existing statutes only insofar as the existing statutes apply. Until the existing statutes are revised, the relationships among the parties must be far closer than that identified by the standard the district court applied.

**V.**

{37} We affirm the district court's ruling that the State was not equitably estopped from participating in this action. We also affirm the district court's ruling excluding evidence of the intent of the parties when executing the lease. However, we reverse the court's ruling that the statutes apply and remand the matter to the district court so that the district court can render a decision under the legal standard we have identified in this opinion. On remand, the court shall permit the parties to present such additional evidence and in such a manner as seems most helpful in applying the standard we have identified. We therefore vacate the judgment entered by the district court, including the injunctive relief granted, lift the stay granted by the Court of Appeals, and

---

2. When applying the substantial government involvement standard, the district court examined nine factors: (a) government involvement in the promotion of the concept of a contract or project; (b) government participation in the funding of the project; (c) financial benefits inuring to a government entity; (d) the public purpose of the project; (e) continuing control over corporate governance, even if it is potential control; (f) continuing control over the current or final disposition of the assets that are or will be the product of the contract or project; (g) commingled public and private financing; (h) whether the activity of the private entity is conducted on publicly owned property; and (i) whether the private entity was created by the public entity. (R.P. 700–01); *see also Inn–Vestment Assocs.,* 909 P.2d at 334–37.

remand the matter to the district court for further proceedings consistent with this opinion, including temporary injunctive relief.

{38} **IT IS SO ORDERED.**

BACA, FRANCHINI, and SERNA, JJ., concur.

MAES, J., recusing.

